[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a post judgment matter. Judgment was entered on May 12, 1997. Currently pending before the court is Plaintiffs:
 a.) Application for Contempt Citation and to Open and Modify Post Judgment Orders as to Weekly Child Support Amount, dated March 13, 2000;
CT Page 1131
 b.) Motion for Contempt Re: Payment of Extra Curricular Expenses, dated March 13, 2000; and
 c.) Motion to Open Judgment and for Upward Modification of Child Support, dated March 13, 2000
In essence, items a and b are the same; seeking recovery of and/or punishment for failure to pay extracurricular expenses for the minor child, Hannah. After all was said and done at the hearings, the plaintiff testified that she was `. . . not pursuing any claim for his failure to pay for extracurricular activities. . .'. Thus the court does not address a and/or b supra.
The motion to modify child support is not so easily disposed of because of the mechanisms used to structure the original judgment.
The parties, with the approval of the court, agreed, at the time of judgment that the husband would pay the wife the sum of $3,033.00 per month as alimony until April 15, 2001 and thereafter the sum of $2,383.00 per month until April 15, 2005. The term of the alimony is non-modifiable and the amount is ONLY modifiable in the event of "the disability of either party'. The parties agree that the alimony issue is not before this court.
In addition to the alimony award, the parties, with the approval of the court, agreed that the husband would pay to the wife the sum of $433.00 per week until April 15, 2005 (the date the alimony obligation ceases.) Thereafter the judgment provided that child support would be calculated in accord with the then extant support guidelines. Presumably these orders would remain in effect until at least June 29, 2110, Hannah's eighteenth birthday.
There are two key problems in analyzing this matter for modification. First, the original judgment did not comply with the then extant guidelines and the court never approved nor commented upon the downward deviation the parties proposed.
Counsel for the plaintiff in canvassing the judgment did note the deviation and indicate that there was to be an application for downward deviation. This application was never acted upon. The problem arises because the defendant now takes the position that $250.00 per week of the alimony is really child support in disguise.
Having carefully reviewed the financial conditions of the parties at CT Page 1132 the time of the divorce, including their relative capacity for future earnings and wealth accumulation, this court cannot determine what, if any portion of the alimony is `really' child support. It would not be beyond the pale for the parties to have negotiated the alimony provided with or without a child support component.
The court was not present during the negotiations and has conflicting information sin front of it as to the existence, intent and breadth, if any of `hidden child support'. It is absolutely clear that this highlights the reason there is a mandate that deviations from the guidelines be identified by nature (specific section) and amount. This is the only mechanism available to allow future courts complete and accurate analysis.
The concept of allowing `hidden child support' within an alimony award is not unheard of; however it may be time to examine this practice in light of the moral dilemma credited by misreporting the true nature of the payments.
Having resolved the first issue by refusing to allocate some unknown and unidentifiable amount of alimony as `child support', the court must next turn to the motion to modify the existing child support order; it is $433.00 per week plus a nebulous number for extracurricular activities[1].
In order for the court to consider the appropriateness of a modification, it must first determine if there has been a change in the circumstances of the parties.
In the captioned matter, the father had earnings available for support consideration at the time of the judgment in the amount of $2,885.00 per week. At the same time the mother had available earnings of $677.28 per week.
To properly determine whether or not there has been a change in circumstances, the court needs to decide what the respective parties have available for support consideration now. Father has the following gross amounts which are properly included in his support income consideration:
 a.) weekly salary $2,875.39 b.) incentive comp $2,432.69
 Total $5,308.08
Mother's income is $759.26 CT Page 1133
Thus, it is readily discernible that there has been a significant change in circumstances and modification is appropriate.
The child support guidelines DO NOT apply to this child and these parties. Thus the court must use its common sense experience and sense of equity to allocate the available familial support resources fairly. In light of the existing and continuing alimony obligation, having full cognizance of the earnings and earnings potential of the parties, allocating all available resources in an equitable manner to be sure the best interests of the child are met, having stricken the so-called `extracurricular' obligation and in light of the financial affidavits at this time, I find that the appropriate child support award, payable from father to mother is $1,250.00 per week. In addition, both parents shall maintain, as available through the workplace, at reasonable cost, health, dental and psychological insurance for the benefit of Hannah. The father shall pay 53% of the existing $61.00/week child care expense. The father shall pay, after mother has paid the first one hundred ($100.00) dollars per year in un-reimbursed medical/dental and/or psychological expense, seventy-five (75%) per cent of all un-reimbursed medical, dental and/or psychological expenses for the benefit of Hannah.
The orders for child support shall be retroactive to May 4, 2000. The arrearage shall be paid at the rate of $200.00 per week.
Having evaluated the statutory criteria[2], including availability of resources, I find it appropriate to award attorney's fees to the wife for the prosecution of this matter. After review of the affidavit submitted by counsel for the plaintiff, having awareness of the time and rates normally required for such matters, I find that counsel is entitled to compensation for 45 hours of service at a rate of $150.00 per hour. In addition, counsel is entitled to recover the $190.00 in costs reported on her affidavit. Thus counsel fees/expenses in the amount $6,940.00 are awarded. The defendant is directed to pay said sum within thirty days of the entry of this order, unless otherwise agreed, in writing, by plaintiff's counsel.
An immediate wage withholding is ordered.
The Court
Daniel E. Brennan, Jr.